UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK S. O'DELL, Individually and on
Behalf of All Others Similarly Situated,

                 Plaintiff,

          -v-                5:24-CV-652

BERKSHIRE BANK, a Massachusetts
Trust Company,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:               OF COUNSEL:

PEIFFER WOLF CARR KANE     DANIEL CENTNER, ESQ.
    CONWAY & WISE, LLP       GRACE A. VAN HANCOCK, ESQ.
Attorneys for Plaintiff         JASON KANE, ESQ.
935 Gravier Street, Suite 1600
New Orleans, LA 70112

SILVER LAW GROUP          PETER M. SPETT, ESQ.
Attorneys for Plaintiff         SCOTT SILVER, ESQ.
11780 W. Sample Road        RYAN A. SCHWAMM, ESQ.
Coral Springs, FL 33065

MCGUIRE WOODS LLP        ALEXANDER M. MADRID, ESQ.
Attorneys for Defendant       JARROD D. SHAW, ESQ.
Tower Two-Sixty, Suite 1800    MELEK J. DUNN, ESQ.
260 Forbes Avenue         NELLIE E. HESTIN, ESQ.
Pittsburgh, PA 15222

DAVID N. HURD
United States District Judge

<u>**DECISION and ORDER**</u>

## I.  <u>INTRODUCTION</u>

On May 13, 2024, plaintiff Mark S. O'Dell ("O'Dell" or "plaintiff") filed this putative class action against Berkshire Bank ("Berkshire" or "defendant") alleging a single claim of aiding-and-abetting common law fraud.

Berkshire has moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(6) and 9(b).  Dkt. No. 27-1.  The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.  Dkt. Nos. 42, 43.

## II.  <u>BACKGROUND</u>

This case arises out of O'Dell and the putative class members' loss of significant savings stemming from a pyramid scheme (the "Ponzi scheme") orchestrated and conducted by non-party M. Burton Marshall ("Marshall").

For three decades, Marshall operated a series of businesses and owned several properties in Madison County, New York.  Compl. ¶ 1.  Marshall's business activities included the preparation of tax returns, self-storage, printing, insurance brokering, property maintenance, and real estate rentals. *Id*.

But Marshall's primary business endeavor was soliciting money to invest in a fund he originated (the "Marshall Fund" or the "Fund") by offering promissory notes ("Notes"); *i.e.*, written documents promising to repay

investors a guaranteed eight percent annual return. Compl. ¶ 2. Marshall solicited friends, neighbors, and clients to invest in the Marshall Fund. *Id.* Marshall paid investors their promised returns and raised new funds by soliciting new investors. *Id.* ¶ 3. Marshall operated the Fund with a single personal checking account that he maintained at Berkshire (the "Berkshire Account"). Compl. ¶ 5. Deposits from new investors were credited to this account and distributions to existing investors were debited from it. *Id.* In other words, Marshall was running a textbook Ponzi scheme. *Id.* ¶ 3.

On April 20, 2023, after running into trouble with his sham business operation when he became ill and required hospitalization, Marshall filed a Petition for relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Action"). Compl. ¶¶ 4, 25. Marshall's inability to solicit new investors during this time crippled the Ponzi scheme. *Id.* ¶ 25. At that time, the Marshall Fund owed approximately 900 Notes to investors valued at over $90 million. *Id.* ¶ 4.

Believing that Marshall's investors will never receive full restitution from the Bankruptcy Action, O'Dell's class action lawsuit followed. Compl. ¶ 10.

## III. <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). So

while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## IV. <u>DISCUSSION</u>

O'Dell's complaint alleges one claim for aiding and abetting fraud in violation of New York State law. Compl. ¶ 10. Berkshire has moved to dismiss plaintiff's complaint on the basis that it fails to state a plausible claim for relief under the heightened pleading requirements articulated under Rule 9(b). Def.'s Mem., Dkt. No. 27-1 at 5.

### A. <u>Aiding and Abetting Fraud</u>

"To establish liability for aiding and abetting fraud, a plaintiff must show (1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and

(3) that the defendant provided substantial assistance to advance the fraud's commission." *Rosner v. Bank of China* ("*Rosner I*"), 2008 WL 5416380, at \*4 (S.D.N.Y. Dec. 18, 2008), *aff'd* 349 F. App'x 637 (2d Cir. 2009) (summary order) ("*Rosner II*") (cleaned up); *Lerner*, 459 F.3d at 292.

As relevant here, the "actual knowledge" element of a claim for aiding and abetting fraud is a distinct requirement from the scienter required to allege the underlying fraud itself. *Agape II*, 773 F. Supp. 2d at 308 (citing *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 442 (S.D.N.Y. 2010)). In other words, a plaintiff "must allege that the defendant had actual knowledge of the wrongful conduct committed, not simply that the defendant should have known of the conduct." *Anwar*, 728 F. Supp. 2d at 442–43 (citing *Rosner II*, 349 F. App'x at 639).

Further, a plaintiff asserting a fraud claim in a federal forum must satisfy the heightened pleading requirement of Rule 9(b). Specifically, under Rule 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." *Lerner*, 459 F.3d at 290 (quoting FED. R. CIV. P. 9(b)). However, because "we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Id.*

(quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (internal quotation marks and citation omitted)).

The requisite "strong inference" of fraud can be demonstrated "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

To prove that defendant aided and abetted the fraud, plaintiff must also show the defendant "provided substantial assistance to advance the fraud's commission." *Rosner I*, 2008 WL 5416380, at *4. Substantial assistance can be ascertained where "(1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed; and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *Agape II*, 773 F. Supp. 2d at 322 (quoting *Rosner I*, 2008 WL 5416380, at *5 (S.D.N.Y. Dec. 18, 2008) (internal citations omitted). Importantly, "[w]here a defendant has no affirmative duty to act, their failure to act may not serve as the basis for claiming that the defendant provided substantial assistance." *Id*.

Berkshire argues that O'Dell has failed to state a plausible claim for aiding and abetting fraud because plaintiff has failed to (1) plead facts giving rise to a "strong inference" that Berkshire possessed "actual knowledge" of

Marshall's Ponzi scheme;[1] and (2) plausibly allege that defendant "substantially assisted" Marshall with the fraud.  Def's. Mem. at 13–14.

Plaintiff argues in opposition that Berkshire had actual knowledge for several reasons.  First, Marshall's Berkshire Account was the largest and most transactionally active account at Berkshire's Oriskany Falls branch prior to the branch's shutdown in 2021.[2]  Compl. ¶¶ 45, 46.

Second, and relatedly, Berkshire had legal and compliance requirements which should have required a heightened degree of diligence and scrutiny into high volume clients such as Marshall.  Compl. ¶ 47.  In plaintiff's view, these requirements should have alerted defendant's personnel to the unusual nature of Marshall's business activities.  *Id.* ¶ 49.  Specifically, plaintiff argues that because Marshall's account was the largest at the branch, Berkshire's personnel knew, or should have known, about the illicit activity in which Marshall was involved.  *Id.* ¶ 49.

 Third, Berkshire had "know your customer" requirements and Anti-Money Laundering ("AML") obligations, as well as their own compliance procedures, to familiarize themselves with and monitor the daily activity of

---

[1]  The parties do not dispute the existence of a fraud, so the first element of plaintiff's claim has been plausibly alleged. Def.'s Mem. at 1.

[2]  O'Dell also contends that, after the Oriskany Falls branch closed, all of Marshall's accounts with Berkshire were transferred to the Seneca Turnpike Branch.  There, Marshall's Checking Account remained among the largest and most profitable accounts with the largest amount of account activity.

their customers.  Compl. ¶¶ 31, 49.   Plaintiff argues that because Marshall
was a prominent member of the community with whom bank employees were
familiar, he should have been flagged by the bank on numerous occasions for
his fraudulent activity.  *Id*. ¶¶ 53, 57.  In spite of this, plaintiff contends the
Bank took no steps to stop Marshall's fraudulent scheme and instead
continued to provide him with banking services.  *Id*. ¶ 59.

In sum, O'Dell contends that because of these requirements, Berkshire
had a duty to understand the nature of Marshall's business and his bank
transactions.  Compl. ¶¶ 41–59.  According to plaintiff, Berkshire actually
discovered Marshall was conducting his fraudulent Ponzi scheme through his
account by virtue of these due diligence responsibilities.  *Id.* ¶¶ 50, 51.
Upon review, Berkshire's motion to dismiss will be granted.  Measured
against the heightened pleading standards articulated under Rule 9(b),
plaintiff has failed to plausibly allege that defendant aided or abetted the
fraud.

## 2. <u>Actual Knowledge</u>

First, O'Dell has failed to plead sufficient facts giving rise to an inference
of actual knowledge or fraudulent intent.  *See Agape II*, 773 F. Supp. 2d at
308 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d
Cir.1994)).  While plaintiff has alleged in general terms that Berkshire had
numerous internal controls, legal obligations, and oversight mechanisms in

place to detect and impede fraudulent activity, plaintiff has not plausibly alleged non-conclusory facts that would somehow permit a "strong inference" that defendant possessed actual knowledge or fraudulent intent.

Similarly, while Marshall possessed the largest account and had personal relationships with some of the bank tellers at the branches he frequented, the fact that Marshall engaged in fraudulent activity does not, by itself, amount to Berkshire possessing knowledge of the fraud.

In *Lerner*, the perpetrator of a Ponzi scheme had a close relationship with a bank's branch manager, who later became a Vice President. 456 F.3d at 281. This bank employee bent the rules for the perpetrator, who was the largest source of deposits at the bank branch, by initially allowing overdrafts on his account. *Id*. Ultimately, this branch manager disallowed the persistent overdrafts but agreed with the perpetrator, at their request, not to report bounced checks to relevant authorities. *Id*. at 282. This branch manager also misrepresented the state of perpetrator's accounts in the face of potential inquiry and directed other bank employees to corroborate this same misrepresentation. *Lerner*, 456 F.3d at 282. Even under this considerably more egregious set of facts, the Second Circuit held that plaintiff "failed to allege actual knowledge of fraud with the particularity necessary to survive the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Id*. at 292–93.

In short, plaintiff's complaint offers speculation as to Berkshire's knowledge based on weak allegations of circumstantial evidence. But the mere fact that defendant *should* have known Marshall was conducting a Ponzi scheme is insufficient to demonstrate actual knowledge for purposes of a common law claim of aiding-and-abetting fraud. *Anwar*, 728 F. Supp. 2d at 442–43 (citing *Rosner II*, 349 F. App'x at 639).

3. **Substantial Assistance**

Even if these allegations of Berkshire's actual knowledge were sufficient, the fraud claim would still fail because plaintiff has failed to plausibly allege that Berkshire provided "substantial assistance" to Marshall in perpetrating the fraud. Plaintiff has not alleged or identified in his complaint any explicit or affirmative duty borne by Berkshire to act in response to Marshall's activity. Further, unlike in *Lerner*, plaintiff has not alleged any facts to suggest that Berkshire's alleged inaction was intentionally designed to aid Marshall in profiting from his activities linked to the Berkshire Checking Account. Instead, plaintiff contends that Berkshire substantially assisted by failing to investigate red flags,[3] assisting Marshall with banking transactions

---

[3] Notably, though, plaintiff has not alleged with particularity a single red flag that Berkshire purportedly identified. Rather, plaintiff contends generally that various control systems existed in Berkshire's operations to flag fraud such as the scheme alleged to have been conducted by Marshall.

related to the Marshall Fund, and failing to terminate their relationship with Marshall.  Compl. ¶¶ 57–59.

Plaintiff argues Berkshire was obliged to familiarize itself with the nature of Marshall's business and bank activity and, by virtue of these obligations, learned of the nature of his Ponzi scheme but did nothing to stop it.  Instead, Berkshire continued providing services to Marshall and benefited from doing so.  Compl. ¶¶ 44–59.  These allegations are not enough to plausibly allege substantial assistance.  Indeed, courts in this Circuit have repeatedly held that a bank employee's provision of services, its opening accounts and approving transfers, or a bank's failure to investigate red flags do not constitute substantial assistance.  *Agape II*, 773 F. Supp. 2d at 323 (citing *Agape I*, 681 F. Supp. 2d at 365–66).

Therefore, O'Dell has not plausibly alleged that Berkshire aided and abetted fraud.

## B. <u>Leave to Amend</u>

As a final matter, plaintiff has requested "an opportunity to amend the Complaint to cure any defects" that might be identified.[4]  Pl.'s Opp'n at 28.

Rule 15(a)(2) provides in relevant part that "[t]he court should freely give leave [to amend pleadings] when justice so requires."  FED. R. CIV. P. 15(a)(2).

---

[4]  Despite being given more time in which to do so, plaintiff declined to amend his pleading as of right in response to defendant's filing of this motion to dismiss.  *See* Dkt. No. 34 (extending deadlines and explicitly noting amendment opportunity)

However, a Court can deny a request to amend as futile where the problem with the claim is "substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Upon review, O'Dell's request for leave to amend will be denied. Where, as here, a plaintiff declines the opportunity to file an amended complaint as of right, the Federal Rules of Civil Procedure require further amendments to be made "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). In this District, litigants seeking the court's leave must file a motion that includes a proposed amended pleading that highlights the proposed amendments. N.D.N.Y. L.R. 15.1(a). The purpose of the Rule is to give the Court some indication of whether permitting the amendment would be a futile exercise. *See id.*

Plaintiff has not done so. Instead, plaintiff has merely requested leave to amend in the concluding paragraph of his opposition. Thus, even putting aside the fact that plaintiff has failed to comply with Local Rule 15.1, he has failed to offer the Court any reason to think that the amendment process would be productive (rather than futile). Importantly, he has not offered any indication in his papers about what, if any, additional facts or circumstances might be alleged to cure the defects identified *supra*. Accordingly, plaintiff's request for leave to amend will be denied.

## V.  <u>CONCLUSION</u>

Plaintiff has not alleged facts that support a plausible inference that

Berkshire possessed "actual knowledge" of Marshall's Ponzi scheme or that

Berkshire "substantially assisted" in Marshall's orchestration or operation of

the Ponzi scheme.

Therefore, it is

ORDERED that

1.  Defendants' motion to dismiss is GRANTED; and

2.  Plaintiff's complaint is DISMISSED with prejudice.

The Clerk of the Court is directed to terminate the pending motion, enter

a judgment accordingly, and close the file.

IT IS SO ORDERED.


Dated:  October 31, 2024
         Utica, New York.

David N. Hurd
U.S. District Judge